## IN THE UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF ARKANSAS
### LITTLE ROCK DIVISION

**IN RE: GREGORY LEE BOOTH, DEBTOR**                    **No.: 4:08-BK-14892**
                                                        **Ch. 13**

### MEMORANDUM OPINION AND ORDER

Taylor, Bean, and Whitaker Mortgage Corp., MERS as Nominee [Taylor Mortgage], objected to confirmation of the plan proposed by the debtor, Gregory Lee Booth [the debtor]. A hearing was held on November 6, 2008; the parties fully briefed the issues. For the reasons stated below, Taylor Mortgage's objection to confirmation is sustained in part and denied in part. The debtor is given twenty-five days from the date of this order within which he may file an amended plan. Upon his failure to do so, or his inability to confirm an amended plan, the court may issue an order to show cause why the case should not be converted or dismissed.

### I. Introduction

The debtor has proposed atypical plan provisions. Determining their appropriateness requires a reconciliation of inherently competing, but equally valid, interests concerning first lien residential mortgages. The debtor seeks to fully enjoy a principal Chapter 13 benefit— the ability to pay his ongoing mortgage payments while addressing his arrearages over a reasonable period. This is a right permitted by the Bankruptcy Code and not otherwise unilaterally available under state law. Conversely, the mortgage holder has certain unalterable contractual rights under its note and mortgage. Unfortunately, these equally compelling rights are difficult to reconcile on a practical and mutually beneficial basis.

The fundamental problem is an interrupted and often irregular payment stream. In a

1

perfect world, the debtor's arrearages would be fixed as of the date of filing; the debtor, temporarily freed from his other obligations, presumably would focus on keeping his home and would continue making his ongoing mortgage payments; the creditor would file a proof of claim for the fixed pre-petition arrearages; insubstantial post-petition fees and costs would accrue; the debtor would propose a plan providing for his arrearages over a reasonable period; and the creditor would make minimal accounting adjustments to reflect an additional payment stream addressing arrearages during the course of the bankruptcy.

But reality differs.  First, debtors face the burden of determining the legal basis and practical means for effectuating their right to cure arrearages, seemingly in a manner contrary to the creditor's "rights" set forth in the note and mortgage.  Second, the interrupted and irregular payment stream often continues post-petition, a situation exacerbated by the realities of plan confirmation and administration.  The debtor's proposed curative language must be analyzed in light of these factors and their effect on the rights of both the debtor and his mortgage holder.

## II. Jurisdiction

This court has jurisdiction over this matter under 28 U.S.C. §§1334 and 157.  This is a core proceeding under 28 U.S.C. §157(b)(2)(L).  The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 7052 and 9014.

## III. Statement of Facts

The parties stipulated to the following facts:

1. That the real property that is the subject of [Taylor Mortgage's] Objection to Confirmation is the principal residence of the Debtor.

2. That the parties offer the Chapter 13 Plan filed by the Debtor on August 12, 2008 as

2

"Joint Exhibit 1."

3. That the parties offer the plan filed by the Amended Chapter 13 Plan filed by the Debtor on October 27, 2008 as "Joint Exhibit 2."

4. That the parties offer the Proof of Claim, Note, and Mortgage filed by [Taylor Mortgage] on September 11, 2008 as "Joint Exhibit 3."

(Joint Stipulations of Fact and Evidence)

Taylor Mortgage's proof of claim is based on a note [Note] and separate mortgage [Mortgage], each dated November 21, 2007. The secured claim is $109,353.38, payable at $797.33 per month. The arrearage claim is $3591.88, representing four past due payments plus other miscellaneous charges.

Concerning "Application of Payments or Proceeds," the Mortgage provides:

Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

(Joint Ex. 3, ¶ 2.)

Beginning January 1, 2008, payments were due on the first of each month. Both the Note and Mortgage have provisions for incidental fees and charges, including attorney's fees.

The Mortgage contains specific notice language, including allowances for address changes. The Mortgage, however, specifically provides that "[t]here may be only one designated notice address under this [Mortgage] at any one time." (Joint Ex. 3, Mortgage ¶ 15.)

The debtor's proposed Amended Chapter 13 Plan [the Plan] calls for a payment of $1085 per month. A representative from the Chapter 13 trustee's office testified that the debtor is

3

timely making his plan payments to the trustee; however, the trustee is holding the payments

pending confirmation of the debtor's plan.  Accordingly, no distributions have been made to

Taylor Mortgage.

     Taylor Mortgage objected to the following language in the Plan:

> Debtor's mortgage company, including its successors, assigns and servicing agents (hereinafter "Mortgage Entitles"), shall not charge any post-petition fees (of any kind or nature) to the Debtor's account, and shall not assess any such fees to the Debtors during the periods of the Chapter 13 Plan or upon conversion of this case to another Chapter of the Bankruptcy Code, without prior Bankruptcy Court approval. Confirmation of this Plan imposes a duty on the Mortgage Entitles to: (1) deem any pre-petition arrearage as contractually current so that no post-petition delinquency status is declared due to pre-petition events that are addressed in the plan; (2) apply Trustee payments on pre-petition arrearages only to such arrearages; (3) apply mortgage payments made during the Plan (whether by the Debtor or by the Trustee) to the month in which they were made (or designated to be made) under or during the plan; (4) post all payments made in accord with the promissory note, mortgage, and/or deed of trustee; (5) notify the Trustee, the Debtors, and the Attorney for the Debtors of any changes in the Interest Rate (and any new resulting payment amount), and of any changes in the taxes and/or insurance related to the collateral, and; (6) comply fully with the provisions of 11 U.S.C. §524(i). Pre-petition arrearages shall include only those sums included in the "allowed" proof of claim.

(Joint Ex. 2, pg. 3.)

     The Plan proposes to address Taylor Mortgage's first lien mortgage debt as a long-term

debt, meaning one that will extend beyond the length of the plan.  During the life of the Plan, the

Chapter 13 trustee is to administer the continuing monthly contractual payment.  Further, during

that same period, the trustee will administer an additional sum each month to address arrearages

in accordance with 11 U.S.C. § 1322(b)(5).  Accordingly, the debtor will pay and the trustee will

administer $797 a month for the regular mortgage payment plus $88.56 per month to be applied

against a pre-petition arrearage of $3188.[1]

As a matter of policy, the Arkansas Chapter 13 trustees insist that debtors make their ongoing mortgage payments through their plans if any pre-petition arrearages exist.  Debtors must file their plans with, or shortly after, their petition and must thereafter immediately begin making the payments called for under their plans to the trustee.  The trustee holds the payments, both with respect to the ongoing mortgage payment and the arrearage payment, until confirmation.  After confirmation, payments are then forwarded on a monthly basis to the creditor, frequently after deductions for attorney's fees and trustee fees.  The trustee attempts, later in the case, to make up partial payments caused by these deductions.[2]

Additionally, the Plan has two miscellaneous provisions, each, according to the debtor, predicated on 11 U.S.C. § 1322(b)(11):

> All contractual provisions regarding arbitration, mediation, or alternative dispute resolution are rejected in connection with the administration of this Chapter 13 case.

> All daily interest accounts shall be placed on a non-accrual basis upon the commencement of the case.

(Joint Ex. 2, pg. 5.)

Neither Taylor Mortgage nor the Chapter 13 trustee objected to these two clauses.

---

[1] The pre-petition arrearage amount listed on Taylor Mortgage's proof of claim and the pre-petition arrearage amount provided for in the Plan differ.

[2] The policies outlined herein concerning the Arkansas Chapter 13 trustees are well-known to the trustees, the attorneys, and the courts and are accordingly judicially noticed. Federal Rule of Evidence 201(b)(1); Briggs v. LaBarge (*In re Phillips*), 317 B.R. 518, 524 (B.A.P. 8th Cir. 2004).

## IV. Discussion

The Plan language disputed by Taylor Mortgage falls into four categories.  The first is prohibitive and relates to the assessment of post-petition fees and costs.  The second category is mandatory and imposes on Taylor Mortgage four specifically enumerated duties, each concerning the application of payments received under the Plan.  The third category imposes on Taylor Mortgage a duty to notify the Chapter 13 trustee, the debtor, and the debtor's attorney of any interest rate, tax, or insurance changes.  The fourth category mandates Taylor Mortgage's full compliance with 11 U.S.C. § 524(i).

Taylor Mortgage asserts that the Plan language either impermissibly modifies the loan contrary to 11 U.S.C. § 1322(b)(2) or "otherwise is not in accord with local bankruptcy practice." (Br. in Support of Objection to Confirmation, pg. 1.)  While local practice is certainly pertinent to this discussion, it is not dispositive.

### A. Post-Petition Fees

Taylor Mortgage objects to the following Plan language:

> Debtor's mortgage company, including its successors, assigns and servicing agents (hereinafter "Mortgage Entitles"), shall not charge any post-petition fees (of any kind or nature) to the Debtor's account, and shall not assess any such fees to the Debtors during the periods of the Chapter 13 Plan or upon conversion of this case to another Chapter of the Bankruptcy Code, without prior Bankruptcy Court approval.

(Joint Ex. 2, pg. 3.)

This court has addressed this issue on two prior occasions. *See In re Alanis*, 316 B.R. 323 (Bankr. W.D. Ark. 2004) and *In re Manus*, 324 B.R. 85 (Bankr. W.D. Ark. 2005).  In *Alanis*, this court sustained an objection to similar language, stating:

6

The bankruptcy code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). As recognized by the debtors, a fee generated after the petition is filed but before confirmation of the debtors' plan may include attorney fees and related expenses for review of the plan, schedules, or other documents filed by the debtors; review and analysis of loan documents; preparation and filing of the proof of claim; and attending the meeting of creditors. If the fees and expenses were based on the creditors' right to collect the fees under the respective pre-petition mortgages or deeds of trust, the right to payment would be part of a pre-petition claim, even though the fees and charges were not incurred until after the debtors filed their respective bankruptcy petitions. (citation omitted)

There is no requirement in the bankruptcy code or rules that a creditor must obtain prior approval of its post-petition charges or fees before including those fees in its proof of claim, as the debtors' plan language would require. Because of this, the Court sustains the creditors' objections to confirmation of the debtors' plans with twenty days for the debtors to amend.

316 B.R. at 325.

The court can discern no appropriate factual or legal reason to deviate from its previous decisions concerning pre-confirmation fees and, by extension, post-confirmation fees during the pendency of a plan. A number of additional bases support this conclusion.

First, the Note and Mortgage expressly provide for the assessment of reasonable costs and attorney's fees. (Joint Ex. 3, pgs. 8, 10.) Consistent with the discussion below, this is a "right" expressly conferred by contract (and typically an incident of these types of transactions), which may not be modified. *See* 11 U.S.C. § 1322(b)(2). Taylor Mortgage should have the right to assess appropriate fees per its agreement with the debtor. Whether it has done or will do so properly under both the contract and applicable state law is a matter that can be resolved if and to the extent the debtor wishes to contest the charges in the then appropriate forum. An injunction that both modifies the mortgage company's rights and invokes a procedure not required under

the Bankruptcy Code is an inappropriate plan provision.

Second, this court concurs with other courts that have reviewed this issue and determined that, in the absence of local rules or court-sanctioned Chapter 13 form plans that provide otherwise, there is no requirement that creditors seek approval of their attorney's fees pursuant to Federal Rule of Bankruptcy Procedure 2016.[3]  The court in *In re Collins* analyzed this issue by stating:

> This entire subsection imposes an unreasonable and burdensome duty upon Beneficial. As an initial matter, attorneys for creditors are not employed under 11 U.S.C. § 327 (2005) and are not subject to the requirements of that and related statutes or Bankruptcy Rules. Pursuant to § 1322(b)(2), the security documents and underlying state law govern Beneficial's "rights" with respect to any post-petition maintenance payments, and as long as the note and security documents between the parties provides for the assessment of charges, including but not limited to late fees, attorney fees, and inspection fees, a provision limiting those rights is an impermissible modification thereof.

No. 07-30454, 2007 WL 2116416, at *16 (Bankr. E.D. Tenn. July 19, 2007); *see also In re Aldrich*, No. 08-00520, 2008 WL 4185989, at *3 (Bankr. N.D. Iowa Sept. 4, 2008) (stating that "[t]he requirement of an application for compensation or reimbursement pursuant to Rule 2016(a) does not apply to a mortgage lender's contractual fees and charges arising after confirmation.") (citation omitted)

 *In re Collins*, a case that provides some precedent for the debtor's proposed plan language, similarly rejects the use of Rule 2016(a) as a basis for requiring an application for charges and fees. 2007 WL 2116416, at *16. *See also In re Hudak*, No. 08-10478-SBB, 2008

---

[3] Although the proposed Plan does not specifically refer to Rule 2016, the Plan's clear intent is a procedure substantively similar to the one contemplated by that Rule.

8

WL 4850196, at *7 (Bankr. D. Colo. Oct. 24, 2008) (finding that a "[c]reditor has no obligation to routinely obtain court approval of postpetition fees, charges, or costs, if any, to be reimbursed for legal services performed *after the filing of the case under the terms of the Deed of Trust* when those postpetition fees, charges, or costs for legal services are sought from the *Debtor* and not the *estate*.") (emphasis in original); Beskin v. Maupin (*In re Maupin*), 384 B.R. 421, 426 (Bankr. W.D. Va. 2007) (rejecting a similiar clause given that if the creditor had to comply with Rule 2016, it was merely an unnecessary recitation of the law; if the creditor did not have to comply with the rule, then there was no appropriate reason to apply the rule.).

Accordingly, Taylor Mortgage's objection to this Plan provision is sustained.

### B. Application of Payments

Plan confirmation would "impose a duty" on Taylor Mortgage to do the following:

> (1) deem any pre-petition arrearage as contractually current so that no post-petition delinquency status is declared due to pre-petition events that are addressed in the plan; (2) apply Trustee payments on pre-petition arrearages only to such arrearages; (3) apply mortgage payments made during the Plan (whether by the Debtor or by the Trustee) to the month in which they were made (or designated to be made) under or during the plan; (4) post all payments made in accord with the promissory note, mortgage, and/or deed of trustee[.]

(Joint Ex. 2, pg. 3.)

The debtor is attempting to design a methodology for implementing the Bankruptcy Code's statutory scheme regarding home mortgage indebtedness. Specifically, Chapter 13 significantly benefits debtors by allowing them to concentrate their available income according to an acceptable plan of reorganization, including the ability to address pre-petition mortgage arrearages on their home. It is not atypical for Chapter 13 candidates to have missed payments

9

on their home mortgage prior to seeking and obtaining the relief afforded by filing a bankruptcy petition.  A plan may not modify creditor rights in a home mortgage transaction.  Under 11 U.S.C. § 1322(b)(2), a plan may

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]

The preceding section is ameliorated by 11 U.S.C. § 1322(b)(5) concerning arrearages, which provides:

> notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]

Consistent with the above, 11 U.S.C. § 1322(e) provides with respect to arrearages:

> Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

The long-term debt, an obligation which contemplates payments beyond the term of the Chapter 13 plan and which is typical of most home mortgage transactions, is not discharged and remains the debtor's obligation. 11 U.S.C. § 1328(a)(1).

The statutory scheme suggests a facially simple process.  Through his plan, the debtor is afforded the opportunity of focusing his resources and providing for his ongoing monthly mortgage payments for the life of his plan, with a commensurate recognition that the debt and lien will survive his plan and discharge until paid.  Concurrently, the debtor is afforded the opportunity of addressing his pre-petition arrearages through a reasonable schedule of monthly

10

plan payments.  This incidental right, unless agreed to by the creditor, is a benefit otherwise unavailable under state law; it is a unilateral right conferred on Chapter 13 debtors.

The scheme should seamlessly work for the benefit of both the debtor and his home mortgage creditor.  Theoretically, the debtor's pre-petition arrearages should easily be fixed on the petition filing date.  Assuming he filed on June 1, the expectation would be that, relieved of his other immediate obligations and with an intent to retain his home, he would timely make his regular June payment either directly to the creditor or through the Chapter 13 trustee.  While maintaining his ongoing payments on a current basis, the debtor would then propose a plan that would, within a reasonable period, address his pre-petition arrearages.  The debtor would keep his home, and the mortgage company would get the benefit of its contract, with the exception of statutorily enforced forbearance concerning arrearages.

Reality differs, however, from the statutory scheme suggested in the Bankruptcy Code. In the first instance, it is the practice of the Arkansas Chapter 13 trustees to insist that, if there are arrearages, the ongoing payments as well as the arrearages must be paid through the plan.  In this hypothetical, the debtor filing on June 1 is not allowed to directly make his June 1 payment and each monthly payment thereafter.  He must pay the trustee.  Complicating matters even further, the trustee's office holds the debtor's ongoing payments until the plan is confirmed. This is exactly what the Chapter 13 trustee is doing in this case.[4]

The normal payment stream is further disrupted by irregular debtor payments (sometimes through wage deductions that can vary for a number of reasons) that do not coincide with the

---

[4] The creditor could move for adequate protection payments, but this occasions additional attorney's fees and court costs, all of which are eventually assessed against the debtor.

normal home mortgage due dates, deductions for trustee fees, deductions for attorney's fees, and processing delays both internal and external, such as when the debtor misses a payment, shorts a payment, or double-ups on a payment, in the Chapter 13 trustee's office.  These events, in the aggregate, result in payments to the mortgage holder often substantially at odds with the contractually anticipated flow of payments.  These factors have a ripple effect in that, typically, notes and mortgages require payments on a date certain, to be applied to the oldest past due payment, with the payments applied first against interest, then principal.  It is frequently difficult to reconcile the note and mortgage according to its terms in light of the erratic and delayed payments received from the Chapter 13 trustee's office, often reduced by deductions, which the trustee's office belatedly attempts to "make up" through subsequent payments.

        The problem, however, is not solely occasioned by the Chapter 13 trustees.  They have the extremely difficult task of analyzing numerous plans, reconciling creditor distributions from infrequent, erratic, or irregular payments, and then distributing sums received in an appropriate manner—all in an effort to bring order to a system that inherently suffers from the normal disjunctive consequences of economic distress.

        Further, the fixed pre-petition arrearages often continue to increase because of delays in payment, late fees, and belated but properly charged fees and costs.  Also, the mortgage holder frequently incurs post-petition costs and attorney's fees associated with such actions as filing motions to lift stay, filing plan objections, or defending claims litigation, which the plan payments often fail to address.

        The problem is how practically to implement a facially simple statutory scheme designed to achieve the goal of a "fresh start" in a meaningful plan where the home mortgage holder's

12

"rights" cannot be modified, while the Chapter 13 trustee must deal with the reality of administering disrupted payment streams.  Given these competing rights and interests, the court concludes that the duties imposed by the language used in the Plan regarding the application of payments do not impermissibly modify Taylor Mortgage's rights.  They simply translate into reality the statutory scheme contemplated in 11 U.S.C. § 1322(b)(2) and (5), as sanctioned by 11 U.S.C. § 524(i).

Section 1322(b)(2) prevents the debtor from proposing plan language that modifies the "rights" of the home mortgage lien holder.  The Bankruptcy Code, however, does not expressly define these rights.  The Supreme Court discussed the concept of these "rights" in *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993):

> The term "rights" is nowhere defined in the Bankruptcy Code. In the absence of a controlling federal rule, we generally assume that Congress has "left the determination of property rights in the assets of a bankrupt's estate to state law," since such "[p]roperty interests are created and defined by state law." (citations omitted) Moreover, we have specifically recognized that "[t]he justifications for application of state law are not limited to ownership interests," but "apply with equal force to security interests, including the interest of a mortgagee." (citation omitted) The bank's "rights," therefore, are reflected in the relevant mortgage instruments, which are enforceable under Texas law. They include the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure. (citations omitted) These are the rights that were "bargained for by the mortgagor and the mortgagee," (citation omitted) and are rights protected from modification by § 1322(b)(2).
>
> This is not to say, of course, that the contractual rights of a home mortgage lender are unaffected by the mortgagor's Chapter 13 bankruptcy. The lender's power to enforce its rights-and, in particular, its rights to foreclose on the property in the event of default-is checked by the Bankruptcy Code's automatic stay provision. 11 U.S.C. § 362. (citation omitted) In addition, § 1322(b)(5) permits the debtor to cure prepetition defaults on a home mortgage by paying off arrearages over the life of the

13

plan "notwithstanding" the exception of § 1322(b)(2). These statutory limitations on the lender's rights, however, are independent of the debtor's plan or otherwise outside of § 1322(b)(2)'s prohibition.

*Id.* at 329–30.

The Plan imposes four duties on Taylor Mortgage with respect to the application of payments received. (Joint Ex. 2.)  Taylor Mortgage correctly interposes that these duties directly contravene the "Application of Payments or Proceeds" section of the Mortgage, these being the standard provisions that dictate that payments, when received, are applied to the oldest outstanding payments in order, first to outstanding interest and then to principal.  If payments are continually delayed or missed, interest and attendant costs may continue to accrue on the past due payments.

But the Bankruptcy Code permits this contravention:

Notwithstanding the general exception set forth in § 1322(b)(2), which prevents the modification of a lender's rights secured by a debtor's primary residence, § 1322(b)(5) explicitly "authorizes debtors to cure any defaults on a long-term debt, such as a mortgage, and to maintain payments on the debt during the life of the plan." (citations omitted) Although the debtor may not change the material terms of the underlying debt, she may stave off foreclosure on her residence by curing a previous default. (citation omitted) The effect of the provision is to "essentially split each of [the debtor]'s secured claims into two separate claims-the underlying debt and the arrearages." (citation omitted) Typically, the pre-petition arrearages payments are made through the plan by the Chapter 13 trustee, while the current amounts due are made directly to the lender. (citation omitted)  If the debtor is successful in curing the default, the debt is reinstated to its pre-default position, thereby "return[ing] the debtor and creditor to their respective positions before the default." (citations omitted)

Ameriquest Mortgage Comp. v. Nosek (*In re Nosek*), 544 F.3d 34, 45 (1st Cir. 2008).

The arrearage portion of Taylor Mortgage's claim, an amount which the debtor can now

14

pay over a reasonable period, is a partitioning not contemplated or unilaterally allowed under the Note and Mortgage; it is a claim bifurcation unique to bankruptcy. Accordingly, there can be plan provisions that adequately effectuate this right.

The first duty requires Taylor Mortgage "to deem any pre-petition arrearage as contractually current so that no post-petition delinquency status is declared due to pre-petition events that are addressed in the plan." (Joint Ex. 2, pg. 3.) The second requires that Taylor Mortgage apply payments received from the trustee on pre-petition arrearages only to such arrearages. (Joint Ex. 2, pg. 3.) The third requires Taylor Mortgage to "apply mortgage payments made during the Plan (whether by the Debtor or by the Trustee) to the month in which they were made (or designated to be made) under or during" the Plan. (Joint Ex. 2, pg. 3.) These three provisions are appropriate and do not impermissibly modify Taylor Mortgage's "rights" under the Note and Mortgage. Without these sensible plan provisions, § 1322(b)(5) would be law without application:

> Moreover, even if the Payment History could somehow be construed as a threat to her right to cure, the proper response of the bankruptcy court would have been an amendment to the Plan specifying the accounting practices necessary to eliminate that threat. (citations omitted) Only with such an amendment in place would the Plan support the imposition of remedies pursuant to § 105(a) if Ameriquest failed to comply with its terms. Absent that specificity, the court had no authority to order the award it did.

*In re Nosek*, 544 F.3d at 48–49.

Specifically, § 1322(b)(5) allows debtors to cure pre-petition arrearages over a reasonable period despite the terms of the underlying debt instruments.[5] This is not a right

___

[5] The borrower's right to reinstatement after acceleration, provided for in the Mortgage, is more restrictive and burdensome on the debtor than the debtor's right to cure arrearages over a reasonable period of time pursuant to § 1322(b)(5) of the Bankruptcy Code.

available under state law; it is unilaterally imposed by the Bankruptcy Code.  Accordingly, for this section to have any practical effect, there must be a meaningful method for its implementation.  The initial three duties do nothing more than provide that method.  The right to cure pre-petition arrearages under § 1322(b)(5) would be meaningless if the creditor did not deem pre-petition arrearages as contractually current and, accordingly, continued to accrue post-petition default interest, costs, and fees on payments that are otherwise permissibly addressed in the debtor's plan.  The "catch 22" effect would be an ever-increasing pre-petition arrearage amount that totally negates the debtor's statutorily conferred right to address, in his plan, a presumably fixed pre-petition arrearage amount.  *See In re Collins*, 2007 WL 2116416 (stating that such a modification is permissible, procedural, and ensures that the debtor's account is not assessed additional charges because of the pre-petition debt). *But see In re Hudak*, 2008 WL 4850196 (suggesting that a similar provision fails because the arrearages can only be determined to be contractually current after pre-petition arrearages have been paid.)  Additionally, the right to cure pre-petition arrearages would be equally meaningless if the mortgage holder was allowed to take ongoing payments and apply them to the oldest outstanding payment, thus rendering the current payments immediately past due. Again, past due charges, interest, and fees would accrue.

This court is persuaded that such provisions are appropriate. Requiring ongoing payments to be applied to current installments and deeming pre-petition arrearages as current is the only meaningful way to realistically allow the debtor to address pre-petition arrearages, as permitted by the Bankruptcy Code.

The fourth duty, which requires Taylor Mortgage to "post all payments made in accord with the promissory note [and] mortgage," is a bit of a puzzler. (Joint Ex. 2, pg. 3.)  This

16

language seems to contradict the other three duties, which are in direct contravention of the "Application of Payments or Proceeds" section of the Mortgage. Absent clarifying language, this fourth duty is ambiguous and must be stricken. The court will not redraft the Plan for the parties.[6]

As noted above, many of the resulting difficulties in these situations relate to the accrual of pre-petition arrearages followed by interrupted payments while awaiting confirmation. These adverse consequences would be attenuated if debtors, with or without the Chapter 13 trustee's consent, insisted on making their post-petition ongoing monthly mortgage payments directly to the mortgage lienholder. This method would at least minimize the accrual of post-petition arrearages and would allow the debtor to focus his income on maintaining the mortgage current post-petition—thus avoiding the inevitable accrual of additional late costs, interest, and fees, while devising a confirmable plan addressing pre-petition arrearages over a reasonable period.[7]

### C. Notification

The Plan requires Taylor Mortgage to do the following:

Notify the Trustee, the Debtors, and the Attorney for the Debtors of any changes in the Interest Rate (and any new resulting payment amount), and of any changes in the taxes and/or insurance related to the collateral[.]

(Joint Ex. 2, pg. 3.)

Taylor Mortgage's objection to this provision is sustained. The court defers to the express terms of the Note and Mortgage. The only notice required of these changes is as set

---

[6] Taylor Mortgage did not specifically object to this provision, but its inclusion in a confirmed plan is inconsistent with the other provisions deemed acceptable in this opinion.

[7] *Contra In re Breeding*, 366 B.R. 21 (Bankr. E.D. Ark. 2007).

forth in the documents.  The Mortgage limits the notice requirement to one address.  If the debtor

is informed, then the debtor must so inform the trustee.  It is inappropriate, and nowhere

statutorily sanctioned, to put this additional burden on the mortgage company.  Presumably, the

debtor, as the party most interested in retaining his home, will be attuned to any changes in his

interest rate, taxes, or insurance, and he must bear the responsibility of informing the trustee and,

if necessary, amending his plan to provide for the adjusted amount.

### D. Compliance with Section 524(i)

The Plan also expressly states that Taylor Mortgage must "comply fully with the

provisions of 11 U.S.C. § 524(i)." (Joint Ex. 2, pg. 3.)  Taylor Mortgage's objection to this

provision is sustained.

In its entirety, 11 U.S.C. § 524(i) provides as follows:

> (I) The willful failure of a creditor to credit payments received under a plan
> confirmed under this title, unless the order confirming the plan is revoked, the plan
> is in default, or the creditor has not received payments required to be made under the
> plan in the manner required by the plan (including crediting the amounts required
> under the plan), shall constitute a violation of an injunction under subsection (a)(2)
> if the act of the creditor to collect and failure to credit payments in the manner
> required by the plan caused material injury to the debtor.

By its express terms, § 524(i) is prospective and is applicable only under certain

conditions, principally a willful failure to credit payments in the manner required by the plan,

that result in material injury to the debtor.  This is a statutory provision that, as a matter of law, is

applicable in certain circumstances that might arise post-confirmation.  No basis or purpose

exists for prophylactically and contractually compelling a creditor to comply with the law. *See In

re Maupin*, 384 B.R. at 429 (considering a similar provision and stating "[t]his provision

imposes a rule of law on creditors that is already imposed on them.  It is unnecessary.")

18

Additionally, this language, by expressly incorporating by reference only the affirmative obligations on creditors imposed by § 524, results in ambiguity with respect to whether the affirmative defenses contained in that section are still available to the creditor.

Perhaps, the real benefit of § 524(i) to this debtor is the express recognition that a plan may permissibly outline a "manner" for addressing payments, thus suggesting that a modification of the payment stream is indisputably necessary given the debtor's right to address arrearages,  and the realities of a payment stream now administered within the context of a Chapter 13 plan, including payments to and from the Chapter 13 trustee.

### E. Miscellaneous Plan Provisions

The Plan contains two other rather unique provisions, each, according to the debtor, predicated on 11 U.S.C. § 1322(b)(11):

> All contractual provisions regarding arbitration, mediation, or alternative dispute resolution are rejected in connection with the administration of this Chapter 13 case.

> All daily interest accounts shall be placed on a non-accrual basis upon the commencement of the case.

(Joint Ex. 2, pg. 5.)

Taylor Mortgage did not object to these two provisions.  The court, however, is entitled to note that these provisions, on their face, are contrary to the Bankruptcy Code.

Specifically, § 1322(b)(11) permits the debtor to "include any other appropriate provision not inconsistent with this title."  Accordingly, the suggested provisions need to comply with the Bankruptcy Code and, implicitly, require a specific and applicable factual context.  These provisions achieve neither.

Factually, both provisions make generic references—"[a]ll contractual provisions" and

19

"[a]ll daily interest accounts"—without reference to any specific contract or contracts. The evidence is not clear what contracts or accounts are being referred to or addressed. The provisions appear to be abstract attempts to selectively void or amend any such contractual provisions as offensive to this debtor. If there is a specific contract or affected party, then that contract or contracting party should be specifically identified and delineated.

From a legal standpoint, the provisions fail on two bases. First, each appears to specifically alter contractual rights, presumably those of the debtor's creditors. Without context, it is impossible to ascertain if these provisions are directed to the first lien residential mortgage holder, in which case the provisions may modify the "rights" of this creditor as expressly prohibited by 11 U.S.C. § 1322(b)(5). The second proposed plan provision, concerning daily interest accounts, could have some application with reference to a permissible arrearages modification; however, absent context referencing a specific contract, it is impossible to determine the appropriateness of this suggested provision.

Second, the two provisions could be an effort to selectively and partially reject executory contracts. Rejection or assumption under 11 U.S.C. § 365, however, must be of the entire agreement. *Stewart Title Guar. Comp. v. Old Republic Nat.'l Title Ins. Comp.*, 83 F.3d 735, 741 (5th Cir. 1996) (noting "[i]t is well established that as a general proposition an executory contract must be assumed or rejected in its entirety.") (citation omitted); *In re Executive Tech. Data Sys.*, 79 B.R. 276, 282 (Bankr. E.D. Mich. 1987) (stating "[u]nquestionably, an executory contract may not be assumed in part and rejected in part, and if a debtor elects to reject an executory contract, he rejects the benefits as well as the burdens.") (citations omitted)

### V. Conclusion

For the reasons stated above, Taylor Mortgage's objection to confirmation of the debtor's

Plan is sustained as to the following provisions:

> Debtor's mortgage company, including its successors, assigns and servicing agents (hereinafter "Mortgage Entitles"), shall not charge any post-petition fees (of any kind or nature) to the Debtor's account, and shall not assess any such fees to the Debtors during the periods of the Chapter 13 Plan or upon conversion of this case to another Chapter of the Bankruptcy Code, without prior Bankruptcy Court approval[.]

> . . . .

> (4) post all payments made in accord with the promissory note, mortgage, and/or deed of trustee;

> (5) notify the Trustee, the Debtors, and the Attorney for the Debtors of any changes in the Interest Rate (and any new resulting payment amount), and of any changes in the taxes and/or insurance related to the collateral, and;

> (6) comply fully with the provisions of 11 U.S.C. §524(i).

And,

> All contractual provisions regarding arbitration, mediation, or alternative dispute resolution are rejected in connection with the administration of this Chapter 13 case.

> All daily interest accounts shall be placed on a non-accrual basis upon the commencement of the case.

The objection filed by Taylor Mortgage is denied as to the following provisions:

> Confirmation of this Plan imposes a duty on the Mortgage Entitles to:

> (1) deem any pre-petition arrearage as contractually current so that no post-petition delinquency status is declared due to pre-petition events that are addressed in the plan;

> (2) apply Trustee payments on pre-petition arrearages only to such arrearages;

> (3) apply mortgage payments made during the Plan (whether by the Debtor or by the Trustee) to the month in which they were made (or designated to be made) under or during the plan;

21

And,

Pre-petition arrearages shall include only those loans included in the "allowed" proof of claim.

The debtor is given twenty-five days from the date of this order within which he may file an amended plan consistent with this opinion. Upon his failure to do so, or his failure to confirm an amended plan, the court may issue an order to show cause why the case should not be converted or dismissed.

IT IS SO ORDERED.

January 14, 2009
DATE

RICHARD D. TAYLOR
U.S. BANKRUPTCY JUDGE

cc.:   Annabelle Patterson
       Joel G. Hargis
       Lyndsey D. Dilks
       Kimberly D. Burnette
       Mark T. McCarty, Chapter 13 Trustee
       U.S. Trustee